Richard W. Wallace, J.
Plaintiff, an eminent scientific consulting group, brings this action to recover a $5,000 fee for the preparation of its written opinion — albeit highly negative — upon the hazard posed to human health by the addition of antibiotics to animal feed. On the trial plaintiff placed the contest on a lofty Miltonic plane: that scientific integrity is not for the hiring, and that although the unfavorable report might constitute a nail in the ultimate coffin of Cyanamid’s agricultural feed business (involving several million dollars of gross sales annually) defendant is nonetheless bound to pay the full contract price.
In June, 1972, when Cyanamid retained plaintiff, the atmosphere was replete with storm warnings as to the future of antibiotics as a safe constituent of animal feed. Some time before this a British scientific journal had published findings (the Swann Report) that while bovine animals seem to thrive profitably on antibiotic feed, its continuous use builds up resistant strains of disease-producing bacteria which can be passed along to human meat and milk consumers with dire results. After much study the United States Food and Drug Administration had issued a 15-man task force report substantially adopting the conclusions of the London study, although 7 members of the task force group dissented from this conclusion. Cyanamid was interested in submitting further favorable evidence to the FDA Commissioner, and to this end Dr. Jackson S. Kiser, the director of Cyanamid’s animal industry research and development, met with plaintiff’s presiding scientist, Dr. Ernest L. *1094 Becker. It is undisputed that Dr. Becker "expressed a tentative preliminary opinion that would have been supportive to Cyanamid, but that both sides understood that the actual report would be rendered by one Dr. Hook, an acknowledged expert. The time pressure was considerable; Cyanamid’s contract letter issued on June 13, and the report were transmitted to Dr. Kiser at Cyanamid on July 11, 1972.
The five-page report submitted by plaintiff was devastating in its condemnation; e.g., “ The addition of antibiotics to animal feedstuff's constitutes a potential and actual hazard to human health.”
Cyanamid might have argued that its contractual arrangement with plaintiff was conditional. On June 9, in a letter preceding the commitment letter of June 13, Dr. Kiser expressed the position that a review of the scientific literature would confirm Cyanamid’s view (which at that time commanded at least arguable scientific respectability), that no threat to human health had been demonstrated, and that “ if you agree,” the study should go forward. It might have followed that a condition precedent to liability for a full scale study was agreement by plaintiff’s advisory group with this fundamental premise (Restatement, Contracts, § 250; Mendenhall v. Klinck, 50 Barb. 634, affd. 51 N. Y. 246). If such a defense had been offered, it might well have led to the conclusion that Cyanamid should pay for the efforts of plaintiff only up to the point where the negative determination became foreordained, but sparing Cyanamid the balance of cost for the final report.
Cyanamid, however, eschewed this course, and adopted a far more ingenuous position. Dr. Kiser testified that he had no quarrel with the conclusion of the report, but rather Cyanamid’s resistance to payment was based on its alleged lack of quality and documentation. This stance created a paradox wholly lacking in persuasiveness. On cross-examination Dr. Kiser conceded that the conclusions contained in the report were “ a factor ” in Cyanamid’s refusal to pay. Furthermore, no independent expert testimony was offered to sustain the contention that the report was lacking in requisite scientific quality.
Thus, the shadowy defense actually tendered by Cyanamid must fail. Accordingly, plaintiff may have judgment against defendant in the sum of $5,000, together with interest as demanded in the complaint.